IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**HAYDEN KIMBLEY,**

        **Plaintiff,**

v.                                                   **CIV 03-1469 LAM**

**JO ANNE B. BARNHART,**
**Commissioner, Social Security Administration,**

        **Defendant.**

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on *Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (Doc. 7)*. In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case. The Court has reviewed Plaintiff's motion *(Doc. 7)* and the memorandum in support *(Doc. 8)*, Defendant's response to the motion *(Doc. 9)*, Plaintiff's reply to the response *(Doc. 12)*, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record, (hereinafter *"Record"* or *"R"*). For the reasons set forth below, the Court **FINDS** that Plaintiff's motion should be **DENIED** and the decision of the Commissioner of Social Security (hereinafter "Commissioner") **AFFIRMED**.

### **I.  Procedural History**

Plaintiff, Hayden Kimbley, filed an application for Disability Insurance Benefits on May 1, 2002. *(R. at 84-86)*. In connection with his application, he alleged a disability since

April 1, 1998, due to Meniere's Disease[1], degenerative disk disease, osteoarthritis, and migraines. *(R. at 94)*. Plaintiff's application was denied at the initial and reconsideration levels. *(R. at 64, 65,66-69,72-75).*

An administrative law judge (hereinafter "ALJ") conducted a hearing on May 8, 2003. *(R. at 28-63)*. Plaintiff was represented at the hearing by an attorney. *(R. at 28).* On June 23, 2003, the ALJ issued his decision in which he made the following findings, *inter alia*, with regard to Plaintiff pursuant to the sequential analysis set forth in 20 C.F.R. 404.1520: (1) claimant meets the requirements set forth in Section 216(i) of the Social Security Act and is insured for benefits through June 30, 2001; (2) claimant has not engaged in substantial gainful activity since the alleged onset of disability; (3) claimant has an impairment or combination of impairments considered "severe"; (4) these medically determinable impairments do not meet or medically equal one of the listed impairments; (5) claimant's allegation regarding his limitations are not totally credible; (6) all medical opinions in the record were carefully considered regarding the severity of claimant's impairments; (7) prior to his date last insured of June 30, 2001, claimant had the residual functional capacity to perform light exertional level work, which did not require fine vision or hearing, did not require excessive standing or walking, did not require climbing, stooping, or crawling, and did not require fine fingering; (8) claimant's past relevant work as high school teacher, college teacher, real estate salesman, and insurance salesman do not require the performance of work-related activities precluded by his residual functional capacity; (9) claimant's medically determinable fibromyalgia, degenerative

---

[1] Meniere's Disease is "an affection [abnormal condition of the body] characterized clinically by vertigo, nausea, vomiting, tinnitus, and progressive hearing loss due to hydrops of the endolymphatic duct." *Stedman's Medical Dictionary* 518 (27th ed., Lippincott Williams & Wilkins 2000).

disc disease of the lumbar and cervical spine, Meniere's disease, migraines, and a left eye cataract did not prevent the claimant from performing his past relevant work prior to his date last insured; and (10) claimant was not under a "disability" as defined in the Social Security Act at any time through the date of the decision. *(R. at 20-21)*.

After the ALJ issued his decision on June 23, 2003, Plaintiff filed a request for review. *(R. at 8)*. On October 31, 2003, the Appeals Council issued its decision denying the request for review *(R. at 5-6)*, making the ALJ's decision of June 23, 2003 the final decision of the Commissioner.

## **II. Standard of Review**

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *See Hamilton v. Sec'y. of Health & Human Services*, 961 F.2d 1495, 1497-1498 (10th Cir. 1992). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief. *E.g., Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). This Court's assessment is based on a meticulous review of the entire record, where the Court can neither re-weigh the evidence nor substitute its judgment for that of the agency. *See Hamlin*, 365 F.3d at 1214; *see also Langley*, 373 F.3d at 1118. "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (internal quotations and citations omitted); *see also Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla

of evidence supporting it." *Langley*, 373 F.3d at 1118 (internal quotations and citations omitted); *see also Hamlin*, 365 F.3d at 1214.

A claimant has the burden of proving his or her disability *(Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)), which is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Secretary has established a five-step process for evaluating a disability claim. *Bowen v. Yuckert*, 482 U.S. 137 (1987). At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful employment; he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. §§ 404.1520 and 416.920. *See Reyes v. Bowen*, 845 F.2d 242, 243 (10th Cir. 1988). At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity (hereinafter "RFC"), age, education, and prior work experience. *See Gatson v. Bowen*, 838 F.2d 442, 446 (10th Cir. 1988).

### III.  Plaintiff's Age, Education, Work Experience, and Medical History

At the time of the hearing, Plaintiff was fifty-three years old *(R. at 32)* and, therefore, is defined as a "[p]erson closely approaching advanced age." (20 C.F.R. § 404.1563(d)). He completed four years of college and has a degree in Business Education. *(R. at 33, 100).* During the fifteen-year period prior to the ALJ's decision, Plaintiff owned and operated his own farm and ranch, and worked

4

as an insurance and real estate agent, a high school teacher, and college instructor. *(R. at 95, 118, 137).*

Plaintiff's medical records are extensive and the administrative record begins in February, 1998 with the continuation of an apparently established relationship with rheumatologist Thomas Ramage, M.D. *(R. at 203-205).* Dr. Ramage's notes indicate that Plaintiff has fibromyalgia[2], osteoarthritis, and hyperlipidemia[3] and his then-current medications included Paxil[4], Trazadone[5], Voltaren[6], Mevacor[7], and Darvocet[8]. *(R. at 203).* Dr. Ramage indicates Plaintiff "is doing well" and that Plaintiff "thinks that Paxil and Trazadone have basically saved his life. So, he is very happy and is working, and is not under the stress he has been in." *(Id.).* On November 17, 1998, Plaintiff returned to Dr. Ramage and reported he was doing well but needed a change in medication due to

---

[2]Fibromyalgia is a syndrome of chronic pain of musculoskeletal origin but uncertain cause. *Stedman's Medical Dictionary* 671 (27th ed., Lippincott Williams & Wilkins 2000).

[3]Hyperlipidemia (synonymous with lipemia) is the presence of an abnormally high concentration of lipids in the circulating blood. *Stedman's Medical Dictionary* 1019 (27th ed., Lippincott Williams & Wilkins 2000).

[4]Paxil (paroxetine) is an anti-depressant drug that affects the chemicals that nerves in the brain use to communicate with one another. *MedicineNet.com.*

[5]Trazodone is an oral anti-depressant drug that affects the chemical messengers (neurotransmitters) within the brain that nerves use to communicate (stimulate) with each other. *MedicineNet.com.*

[6]Voltaren (diclofenac) is a non-steroidal anti-inflammatory drug (NSAID) effective in treating fever, pain, and inflammation in the body. *MedicineNet.com.*

[7]Mevacor (lovastatin) is a cholesterol lowering medicine that inhibits the production of cholesterol by the liver. *MedicineNet.com.*

[8]Darvocet (propoxyphene and acetaminophen) is a medication for treating pain. Propoxyphene is an opioid analgesic (related to opium) chemically similar to methadone. Acetaminophen is a non-narcotic analgesic (pain reliever) and antipyretic (fever reducer). *MedicineNet.com.*

gastrointestinal problems. *(R. at 200)*. Dr. Ramage noted that Plaintiff is hurting more due to his "fairly pronounced degenerative disease" and prescribed Relafen[9] and Zocor.[10] *(Id.)*.

Plaintiff consulted Ralph F. Rashbaum, M.D. of the Texas Back Institute, on August 26, 1999, complaining of severe pain in his lower back. *(R. at 142-144)*. Dr. Rashbaum's impression was that Plaintiff "has lumbar spondylosis[[11]] with degenerative disc disease, L5-S1 greater than L4-5, with mechanically induced low back pain . . . [that] is seemingly getting worse." *(R. at 143)*. Dr. Rashbaum prescribed Indocin SR[12] 75mg and Darvocet-100 and scheduled Plaintiff for lumbar facet injections. *(R. at 144)*. On September 10, 1999, Dr. Ramage ordered x-rays and on September 24, 1999 he ordered a bone scan after Plaintiff returned, complaining of severe hip pain and osteoarthritis. *(R. at 196)*. The x-rays show only a "[n]arrowing of the L5-S1 disc space with vacuum phenomenon in keeping with degenerative disc change." *(R. at 199)*. The bone scan indicated "some slight increased uptake about the joints in both shoulders," in keeping with the diagnosis of degenerative joint disease. *(R. at 195)*. On September 17, 1999, Plaintiff received the facet injections. *(R. at 141)*. However, the injections failed to relieve Plaintiff's pain and Dr. Rashbaum noted the need to explore other options, short of a spinal fusion. *(R. at 140)*. On November 4, 1999, Dr. Rashbaum stated that

---

[9]Relafen (nabumetone) is a non-steroidal anti-inflammatory drug (NSAID) effective in treating fever, pain, and inflammation in the body. *MedicineNet.com.*

[10]Zocor (simvastatin) is a cholesterol lowering medicine that inhibits the production of cholesterol by the liver. *MedicineNet.com.*

[11]Spondylosis is a stiffening of the vertebra; the term is often applied nonspecifically to any lesion of the spine of a degenerative nature. *Stedman's Medical Dictionary* 90, 1678 (27th ed., Lippincott Williams & Wilkins 2000).

[12]Indocin SR (indomethacin) is a non-steroidal anti-inflammatory drug (NSAID) that reduces fever, pain, and inflammation. *MedicineNet.com.*

because he was unable to identify a surgical site or surgical procedure that would relieve Plaintiff's pain, the only potential options left were reconditioning programs and pain control.[13]  *(R.at 139).*

On February 17, 2000, Plaintiff returned to Dr. Ramage with severe back pain and requested enrollment in a pain clinic.  *(R. at 189).*  Dr. Ramage proposed that Plaintiff see a neurological surgeon, Dr. Mark D'Alise, prior to entering a pain control clinic, noting that "basically, the man is in very good health, but he has depression/fibromyalgia disorder . . . [and] back pain is now dominating his life."  *(R. at 189).*  During April, 2000, Plaintiff underwent testing and an evaluation by Dr. Mark D'Alise and Dr. D'Alise found severe degeneration of the L5-S1 disk space.  *(R. at 161, 162, 163-168).*  Prior to committing to a surgical procedure, Dr. D'Alise referred Plaintiff to Dr. Bhupesh Dihenia for a complete neurological workup due to some of Plaintiff's other odd complaints, *i.e.*, dizziness and migraine.  *(R. at 161).*

On July 26, 2000, Dr. Dihenia and Dr. Kim Pershall, otolaryngologist, reported that Plaintiff's dizziness and vertigo were due to Meniere's disease.  *(R. at 145, 233).*  Plaintiff was prescribed Valium[14] and Zomig[15] to control the vertigo and migraine headaches.  *(R. at 145, 220).*  On August 21, 2000, Dr. D'Alise offered Plaintiff a lumbrosacral decompression and reconstruction from L5 to

---

[13] On April 13, 2000, Dr. Rashbaum sent a letter to Plaintiff's counsel stating that although Plaintiff was incapable of performing the work necessary to maintain a farm, Plaintiff was not disabled and was capable of gainful employment.  Dr. Rashbaum expressed concern that Plaintiff had not attempted rehabilitation due to the lack of facilities in his geographical location and was instead claiming disability.  *(R. at 138).*

[14] Valium (diazepam) is a member of the benzodiazepine family.  Benzodiazepines are sedatives that cause dose related depression of the central nervous system.  They are useful in treating anxiety, insomnia, seizures, and muscle spasms.  *MedicineNet.com.*

[15] Zomig (zolmitriptan) is a drug for treating migraine headaches.  Migraine headaches are believed to result from dilation of the blood vessels in the brain.  Zolmitriptan causes constriction of the blood vessels and thereby relieves the pain.  *MedicineNet.com.*

S1 with a posterior lumbar interbody fusion augmented by pedicle fixation to correct the collapse of the disk space, and with the goal of reducing Plaintiff's pain. *(R. at 160).* On September 20, 2000, Plaintiff successfully underwent the surgery and by postoperative day three was ambulating without difficulty. *(R. at 147, 150).* On November 13, 2000, six weeks postoperatively, Plaintiff was doing extremely well and reported his back and leg pain was markedly improved. *(R. at 158).*

On December 18, 2000, Dr. Pershall noted that Plaintiff reported he was doing markedly better in controlling episodes of migraine and Meniere's, and if he was able to take the Zomig and Valium at the onset of an episode he was able to control them quite well. *(R. at 212).* Plaintiff told Dr. Pershall that he was "very, very pleased. This is the best that he has been." *(Id.).* On February 5, 2001, five months after surgery, Plaintiff reported to Dr. D'Alise that he was doing extremely well until he strained his back working in his barn. *(R. at 156).* Plaintiff was prescribed muscle relaxants and pain medication. *(Id.).* Overall, Plaintiff was "very pleased with how things are going." *(Id.).*

On April 12, 2001, Plaintiff returned to Dr. Ramage with no specific complaints, but Dr. Ramage noted a medical history of fibromyaligia, hyperlipidemia and OA/DJD (osteoarthritis/degenerative joint disease). *(R. at 179).* In reviewing Plaintiff's systems, the doctor noted that Plaintiff also had a history of Meniere's syndrome, eye pain, ear pain, a hearing deficit, occasional severe headaches, some neck pain, difficulty with balance and dizzy spells, and continual back pain. *(Id.).* However, Dr. Ramage's final assessment was that the Plaintiff has fibromyalgia but the symptoms are well-controlled, current medicines will be continued and Plaintiff will return in 6 months. *(R. at 180).*

Plaintiff provided medical records through February, 2003, but since Plaintiff was insured for Disability Benefits only through June 30, 2001, the ALJ did not consider medical records after that date in determining Plaintiff's disability. *(R. at 62)*.

On July 18, 2002, a state agency physician completed a physical residual functional capacity assessment on Plaintiff. *(R. at 258-265)*. The state agency physician found that Plaintiff had the following exertional limitations: (1) he could occasionally lift and/or carry a maximum of twenty pounds; (2) he could frequently lift and/or carry a maximum of ten pounds; (3) he could stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday; (4) he could sit (with normal breaks) for a total of about six hours in an eight-hour workday; (5) he could push and/or pull (including operation of hand and/or foot controls) without limitation, other than as shown for lift and/or carry. *(R. at 259)*. He also found that Plaintiff could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, and that Plaintiff had no manipulative, visual, communicative, or environmental limitations. *(R. at 260-262)*. This assessment was affirmed on review by another state agency physician. *(R. at 265)*.

## IV.  Discussion/Analysis

Plaintiff contends that the ALJ erred in his analysis of Plaintiff's disability. Specifically, Plaintiff asserts that: (1) the ALJ failed to perform a retrospective analysis of the Plaintiff's medical deterioration and worsening impairments after the date last insured; (2) the ALJ failed to properly evaluate Plaintiff's fibromyalgia as a distinct impairment or in combination with Plaintiff's other impairments; (3) the ALJ erred in assessing Plaintiff's credibility; (4) the ALJ improperly disregarded the testimony of the vocational expert; and (5) the ALJ mischaracterized the evidence in the record.

Defendant argues that the ALJ applied the correct legal standards and his decision that Plaintiff was not disabled during the relevant time period is supported by substantial evidence.

### A.  Retrospective Analysis

A claimant seeking Social Security disability benefits is required to show that he was totally disabled prior to expiration of his insured status.  *See Henrie v. United States Dep't of Health and Human Services*, 13 F.3d 359, 360 (10th Cir. 1993).  It is undisputed that Plaintiff's insured status expired June 30, 2001.  *(R. at 14; Plaintiff's Memorandum, Doc. 8, p. 1).*

Plaintiff argues that the ALJ had a duty to perform a retrospective analysis of the Plaintiff's medical deterioration and worsening impairments <u>after</u> the date last insured.  *(Plaintiff's Memorandum, Doc. 8, pp. 13-15).*  In support of this argument, Plaintiff relies upon *Miller v. Chater*, 99 F.3d 972, 977 (10th Cir. 1996) and quotes a passage stating that evidence subsequent to the date last insured is pertinent evidence and "may disclose the severity and continuity of impairments existing before the earnings requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date."  *(Plaintiff's Memorandum, Doc. 8, p. 13; Miller*, 99 F.3d at 977).  Based on this quote, Plaintiff argues that the ALJ erred in not considering "the fact of further deterioration, degeneration, and extreme medical procedures after June 30, 2001."  *(Plaintiff's Memorandum, Doc. 8, p. 15).*  In *Miller*, the ALJ's decision was based on the fact that there was insufficient medical evidence to establish the plaintiff's disability before the date last insured.  *Miller*, 99 F.3d at 976.  The Tenth Circuit found that the ALJ erred in not considering subsequent medical evidence that indicated the disabling condition existed prior to the date last insured.  *Id*. at 977; *see also Baca v. Department of Health and Human Services*, 5 F.3d 476 (10th Cir. 1993) (Plaintiff failed to provide medical evidence

for the period under review, however, subsequent medical records provided direct medical evidence that plaintiff suffered from physical and mental impairments prior to the expiration of his insured status). The facts in this case are distinguishable from the above cited cases as Plaintiff provided abundant medical records documenting his impairments prior to the date last insured, making it unnecessary for the ALJ to rely on subsequent medical records.

However, the ALJ did examine Plaintiff's medical records beyond the expiration date of his insured status of June 30, 2001, noting that claimant did not return to Dr. Ramage with complaints of severe fibromyalgia pain and back pain until February 19, 2002, well after his date last insured. *(R. at 18)*. The ALJ also considered that fact that Plaintiff returned to Dr. D'Alise with complaints of neck and arm pain on September 10, 2002, more than a year after his date last insured. *(Id.)*. And the ALJ also noted that Plaintiff told Dr. Pershall, on October 8, 2001, that he had had "a good year," and that he was "able to control his symptoms." *(R. at 19)*. The ALJ also found that "[i]t was not until September 2002, over a year after his date last insured, that the claimant complained to Dr. Pershall of significantly worsening symptoms." *(Id.)*.

The Court finds that the ALJ had sufficient medical evidence to determine Plaintiff was not disabled during the relevant period, prior to the June 30, 2001 expiration of his insured status, making a retrospective analysis unnecessary.

### B. Fibromyalgia Analysis

Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's fibromyalgia as a distinct impairment or in combination with Plaintiff's other impairments. *(Plaintiff's Memorandum, Doc. 8, pp. 15-18)*. The Social Security regulations require a determination of whether a plaintiff's impairment or impairments are of a sufficient medical severity, either separately or in combination,

11

to be the basis of eligibility for a disability determination under the law. (20 C.F.R. §§ 404.1520, 404.1523). If a medically severe combination of impairments is found, the combined impact of the impairments is considered throughout the disability determination process. (20 C.F.R. § 404.1523).

In this case, the ALJ found that Plaintiff had severe impairments due to fibromyalgia, degenerative disc disease of the lumbar and cervical spine, Meniere's disease, migraines, and a left eye cataract. *(R. at 15)*. The ALJ then carefully reviewed all of Plaintiff's medical records and noted the physicians' diagnoses, treatments, surgery, medications and Plaintiff's progress. *(R. at 15-16)*. After this review of the record, the ALJ found that, prior to his date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the impairments listed in Appendix 1, Subpart P, Regulations No. 4. *(R. at 16)*. In reaching this decision, the ALJ stated he considered the opinions of the state agency medical consultants who evaluated Plaintiff's impairments at the initial and reconsideration levels of the administrative review process and reached the same conclusion. *(R. at 16)*. The ALJ also noted that no treating or examining physician indicated findings that would satisfy the severity requirements of any listed impairment. *(Id.)*.

The bulk of the ALJ's review and decision concerns Plaintiff's lumbar and cervical degenerative disc disease, because the bulk of Plaintiff's medical records, treatment, surgery, and medications detail Plaintiff's back and neck problems. Plaintiff did not even list fibromyalgia as one of his illnesses in his Disability Report dated April 4, 2002. *(R. at 94)*. The fact that the ALJ devoted a paragraph to each of Plaintiff's impairments does not mean that he failed to consider them in combination. The Court finds that the ALJ properly evaluated the evidence of fibromyalgia singularly and in combination with Plaintiff's other impairments.

### C. Credibility

Plaintiff argues that the ALJ erred in failing to grant Plaintiff complete credibility as to all of his complaints. *(Plaintiff's Memorandum, Doc. 8, pp. 16, 17).* Plaintiff alleges he is entitled to a finding of complete credibility because he frequently obtained medical treatment, was a cooperative patient, had a healthy lifestyle, his complaints were substantiated by objective medical findings, and he reported some relief from his treatment. *(Id. at 17).*

"Credibility determinations are peculiarly the province of the finder of fact," and will not be overturned if supported by substantial evidence. *Diaz v. Sec'y of Health and Human Services*, 898 F.2d 774, 777 (10th Cir. 1990). However, such deference is not absolute. *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) ("Although this court ordinarily defers to the ALJ as trier of fact on credibility . . . deference is not an absolute rule." [citations omitted]). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988) (footnote omitted).

In this case, the ALJ stated that he evaluated Plaintiff's symptoms in accordance with 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p. *(R. at 17).* Section 404.1529(a) provides, in part, that in determining whether a claimant is disabled, the Commissioner must consider all of the claimant's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. (20 C.F.R. 404.1529(a)). Section 404.1529(c) also provides that in evaluating the intensity and persistence of claimant's symptoms, such as pain, the Commissioner will consider all the available evidence including medical signs or laboratory findings, objective medical evidence, and other evidence (*i.e.*, daily activities; location, duration, frequency and intensity of pain; precipitating and

13

aggravating factors; type, dosage, effectiveness, and side effects of medications; treatments for relief of pain; any measures used to relieve pain, and other factors concerning functional limitations and restrictions).  (20 C.F.R. § 404.1529(c)).

In this case, the ALJ set forth numerous reasons supporting his credibility assessment.  One reason was that the objective medical evidence did not support Plaintiff's allegations at the level of severity he claimed prior to his date of last insured.  The ALJ supported this finding with a detailed review of the medical record that indicated Plaintiff's back pain was alleviated by surgery in September, 2000 and his post operative status indicated marked improvement. *(R. at 18)*.  Plaintiff did not return to his physicians complaining of severe pain until February, 2002, well after his date last insured.  *(Id.)*.  The ALJ specifically states that Plaintiff's symptoms "may be at the level of severity he alleged at the hearing [on May 8, 2003], which was held almost two years after his date last insured, but the medical records do not support a finding that his symptoms were at the level he alleges prior to his date last insured."  *(Id.)*.  Plaintiff's medical records regarding his Meniere's symptoms and migraines revealed a similar pattern.  *(Id.)*.  Plaintiff had mild symptoms that were controlled with medication, and he did not begin complaining of the frequent and acute symptoms until well after his date last insured.  *(Id.)*.

The ALJ also noted that throughout the medical records, Plaintiff's physicians repeatedly described him as being actively engaged in farming and ranching.  *(R. at 19)*.  The ALJ states that Plaintiff continued performing extensive activities, including hunting, watering and mowing the grass on a riding mower, driving 12 miles into town every day for lunch, woodworking crafts, exercising for at least 45 minutes every day, reading books and magazines, and helping his wife cook dinner for the family on Sundays.  *(R. at 19)*.  The ALJ found that Plaintiff's "testimony as to the extent,

intensity, and duration of subjective symptoms and resulting limitations is credible only to the extent that he was limited to light exertional work, which did not require fine vision or hearing, did not require excessive standing or walking, did not require climbing, stooping, or crawling, and did not require fine fingering." *(R. at 19-20).*

The Court finds that the ALJ applied the correct legal standards and his decision on Plaintiff's credibility is supported by substantial evidence in the record.

### D.  Vocational Expert Testimony

The Plaintiff next argues that the ALJ improperly disregarded the testimony of the vocational expert (hereinafter "VE") that Plaintiff could not perform any work.  *(Plaintiff's Memorandum, Doc. 8, pp. 18-19).*  The Plaintiff argues that when his attorney presented a hypothetical to the VE, including the limitation that Plaintiff would miss three to four days of work a month due to his Meniere's disease, the VE stated Plaintiff would be employable only as a part-time realtor *(Id. at 18; R. at 59)*, and that when the limitations imposed by the side effects of Plaintiff's medication were added to the hypothetical, the VE stated Plaintiff would be unable to perform any work. *(Plaintiff's Memorandum, Doc. 8, p. 18; R. at 60).*

Plaintiff is correct that the VE stated Plaintiff would be unable to perform any work under the limitations imposed in the hypothetical posed by Plaintiff's attorney.  However, the limitations included in the hypothetical posed by Plaintiff's attorney were not representative of Plaintiff's condition on June 30, 2001, his date of last insured.  None of Plaintiff's physicians indicated that he would be unable to work three to four days a month due to the Meniere's disease; that assessment came from Plaintiff during the hearing and was indicative of his condition at that time (May 8, 2003). *(R. at 48).*  Plaintiff repeatedly reported to his physician that the prescribed medications controlled

15

his Meniere's and migraine symptoms *(R. at 207, 209, 212)* and did not complain about increased problems until September, 2002 *(R. at 292, 297)* and complained about side effects only at the hearing *(R. at 39, 50-51)*. Both complaints came after Plaintiff's last date insured, June 30, 2001.

In response to the ALJ's hypotheticals, based upon the impairments which the ALJ accepted as true,[16] the VE stated that Plaintiff would be able to return to his past relevant work as a realtor, insurance agent, high school teacher, or college professor, but would be unable to return to work as a rancher or farmer. *(R. at 58)*.

The Court finds the ALJ did not improperly disregard the VE's testimony and that the hypotheticals posed by the ALJ accurately reflect Plaintiff's impairments; therefore, the VE's testimony provided substantial evidence to support the ALJ's finding that Plaintiff can return to his past relevant work.

### E. Mischaracterization of the Evidence of Record

Plaintiff argues that the ALJ improperly characterized Plaintiff's past work as that of a college professor. *(Plaintiff's Memorandum, Doc. 8, pp. 19-20)*. Plaintiff stated, both in the record and at the hearing, that he attempted teaching at the college level for one semester but found he could not do it. *(R. at 34-35, 94-95, 118, 121)*.

The criteria for evaluating past relevant work include duration (sufficient to learn required skills), recency (within the last 15 years), and substantial gainful activity. (20 C.F.R. § 404.1565(a)). The Court agrees with Plaintiff that teaching for one semester was too short a time period to be considered past relevant work. However, the Court finds the ALJ's error to be harmless as Plaintiff's

---

[16]An ALJ's hypothetical question posed to a vocational expert must sufficiently describe a claimant's impairments which the ALJ accepts as true. *Chamberlain v Shalala*, 47 F.3d 1489, 1495 (8th Cir. 1995).

other past work as a high school teacher, realtor, and insurance agent were identified as past relevant work that Plaintiff retained the ability to perform.  *(R. at 58)*.

### V.  Conclusion

In conclusion, the Court **FINDS** that the Commissioner's decision is supported by substantial evidence in the record as a whole and comports with relevant legal standards.  Accordingly, the Court will **AFFIRM** the decision of the Commissioner.

**WHEREFORE, IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED** and *Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (Doc. 7)* is **DENIED**.  A final order will be entered concurrently with the Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**